UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AUGUSTIN AGUAYO | ) |
| | ) |
|       Petitioner, | ) |
| | ) |
| v. | ) CA No. 05-1580 (EGS) |
| | ) |
| DR. FRANCIS J. HARVEY, | ) |
|   SECRETARY OF THE ARMY | ) |
|       Respondent. | ) |
| | ) |

**RESPONDENT'S OPPOSITION TO PETITIONER'S
AMENDED PETITION FOR A WRIT OF HABEAS CORPUS**

**INTRODUCTION**

    Specialist Aguayo ("Petitioner" or "SPC Aguayo"), a soldier in the United States Army ("Army"), challenges the Army's denial of his application for conscientious objector ("CO") status and requests to be discharged from his voluntary military service obligation.  Because SPC Aguayo is challenging an internal military personnel decision, the narrow standard of review governing this type of habeas petition only requires the Army to show that its decision had some basis in fact.  United States ex rel. Barr v. Resor, 443 F.2d 707, 708 (D.C. Cir. 1971) (Whether or not there was a "basis in fact" for the administrative decision is the accepted standard of review in cases challenging the denial of conscientious objector status, citing Bortree v. Resor, 144  445 F.2d 776 (1971)).

    In this case, the record provides ample evidence to meet the basis in fact standard, and to justify the Army's denial of SPC Aguayo's conscientious objector application.  The Department of the Army Conscientious Objector Review Board ("DACORB") determined that SPC Agauyo did not meet the criteria for discharge as a CO.  The respondent therefore respectfully requests

that SPC Aguayo's amended petition for a writ of habeas corpus be denied.

## STATEMENT OF FACTS

A.    **Petitioner Aguayo's Conscientious Objector Application**

Petitioner voluntarily enlisted in the Army on November 19, 2002, AR 0004, with an entry date of January 14, 2003, AR 0059.  His enlistment period was for eight years with four years of it on active duty.  AR 0002, 0013.

In February 2004, shortly after arriving at his unit and receiving notice of a deployment to Iraq, SPC Aguayo submitted an application for discharge on the basis of conscientious objection. AR 0047, 0062-63.  Chaplain Downs interviewed Petitioner on February 16, 2004, AR 0073-74, and the psychologist interviewed Petitioner on February 15, 2004, AR 0075.  Colonel Dragon appointed Captain ("CPT") Sean Foster as the Investigating Officer ("IO").  AR 0060-61.  After the investigation, based on the hearing, AR 0082-85, CPT Foster recommended that Petitioner be granted conscientious objector status.  AR 110.

On March 3, 2004, Petitioner waived his rebuttal rights.  AR 0049.  CPT Foster signed his Findings and Recommendations Memorandum on March 20, 2004.  AR 0053-54. Petitioner's Company Commander recommended approval and his Battalion and Brigade Commanders recommended disapproval.  AR 0055-58.  After receiving legal review from the Staff Judge Advocate, AR 0047, the Commanding General, Major General Batiste, recommended disapproval of Petitioner's application on May 23, 2004.  AR 0046.  On July 30, 2004, the DACORB determined that SPC Aguayo did not qualify as a conscientious objector and therefore was not entitled to be separated.  AR 0044, 0131.  Due to Petitioner's participation

in combat operations under enemy hostile fire, Petitioner was awarded the Combat Medical Badge on September 19, 2004.  AR 0086.

More than one year after the initial denial by the DACORB, Petitioner filed suit on August 5, 2005 and argued that the Army violated its regulations and also that the Army's denial of Petitioner's application was unsupported by a reason and lacked a basis in fact.  Petition ¶¶ 40-41.  Because Petioner's rebuttal had not been considered by the DACORB, the Army agreed to conduct a de novo review of petitioner's application.  The Army told Petitioner to submit his rebuttal packet through his unit, which would send the packet to the DACORB for review.  SPC Aguayo submitted his rebuttal packet, dated September 19, 2005, to the DACORB.  AR 0092-0130.  On January 30, 2006, the DACORB again determined that SPC Aguayo did not present clear and convincing evidence and denied his application.  AR 0089.

**B.     The Army's Conscientious Objector Review Procedure**

The Department of Defense has promulgated regulations regarding the procedures for processing applications for discharge on the basis of conscientious objection.  See 32 C.F.R. part 75 - Conscientious Objectors.  These regulations serve as the basis for Army Regulation (AReg) 600-43, "Conscientious Objection," May 15, 1998, attached hereto as Defense Exhibit ("Def. Ex.") A, which specifically governs applications for CO status within the Army.

The regulation defines conscientious objection as a "firm, fixed and sincere objection to participation in war in any form or the bearing of arms, because of religious training and belief." Religious training and belief is defined as "belief in an external power or being or deeply held moral or ethical belief, to which all else is subordinate or upon which all else is ultimately

dependent, and which has the power or force to affect moral well-being....The term 'religious training and belief' may include solely moral or ethical beliefs even though the applicant himself may not characterize these beliefs as 'religious' in traditional sense..." Army Reg. 600-43, Section II, Terms.  Soldiers requesting discharge on the basis of conscientious objection, known as 1-O status[1], must satisfy the additional requirement of a sincere objection to war in any form. Id.  A soldier must establish that he or she meets this standard by clear and convincing evidence[2].  Army Reg 600-43, ¶ 1-7(c).

In order to begin the CO review process, a soldier must submit an application on a Department of the Army ("DA") Form 4187 (Personnel Action) to his or her immediate commander with the information required by AReg 600-43, ¶ 2-1.  The commander counsels the soldier regarding the consequences of conscientious objector status, notably, the possible non-entitlement to benefits administered by the Department of Veteran's Affairs.  Id. at ¶ 2-2(b).  The commander then arranges for the soldier to be interviewed by a chaplain, and to receive a mental status evaluation.  Id. at ¶ 2-2(e). The chaplain will interview the soldier, but will not make a recommendation as to approval or disapproval of the application.  Id. at ¶ 2-3(a)(2)(h).  The mental status evaluation is conducted to ensure that the soldier is not suffering from any mental disease or defect, and is able to cooperate intelligently in the administrative proceedings,

---

[1] A soldier may also apply for "non-combatant" or 1-A-O status.  However, petitioner did not apply for this status and Army Regulation 600-43 ¶ 1.7(d) precludes award of 1-A-O status as a compromise when the soldier requests 1-O status.

[2] The "clear and convincing" evidence standard is higher than the "preponderance of the evidence" standard, common in civil cases, but not as high as "beyond a reasonable doubt." United States v. Dozier, 162 F.3d 120, 123 (D.C. Cir. 1998); see also Koszola v. FDIC, 393 F.3d 1294, 1300 (D.C. Cir. 2005) (citing Addington v. Texas, 441 U.S. 418, 425 (1979).

however, no recommendation is made as to approval or disapproval of the application. Id. at ¶ 2-3(b).

Once the chaplain's report and mental status evaluation are complete, the soldier's application, the chaplain's report and the report of the mental status evaluation are forwarded to the soldier's brigade-level commander, who appoints an investigating officer. AReg 600-43, ¶ 2-4. The investigating officer reviews the evidence of record, and holds a hearing on the soldier's application for CO status. Id. at ¶ 2-5. The soldier may appear in person at the hearing, and may present any additional evidence or witnesses to substantiate his claim. Id. After hearing all of the evidence, the investigating officer prepares a report outlining the evidence and recommending approval or disapproval of the soldier's application. Id. at ¶ 2-5(k). Once the investigating officer prepares a report, the soldier is entitled to submit a rebuttal statement to that report within ten calendar days. Id. at ¶ 2-5(m).

The investigating officer's report and the case record is then forwarded through command channels for recommendations and for review by the staff judge advocate. Id. at ¶ 2-6. The soldier is entitled to submit a rebuttal if new information adverse to him is added, or a new recommendation is made. Id. at ¶ 2-6(e). The entire record is then forwarded to the DACORB. Id. at ¶ 2-8. The DACORB makes the final determination on all applications for discharge on the basis of conscientious objection. Id.

## ARGUMENT

**A.      The Standard Of Review Is Narrow And Deferential**

SPC Aguayo asks this Court to review a personnel decision made by the Army denying his application for discharge under the Army's Conscientious Objector regulation. Military

personnel decisions are afforded substantial deference by the Courts. <u>Piersal v. Winter</u>, 435 F.3d 319 (D.C. Cir. 2006) (Review of military corrections board decision is to be under a particularly deferential standard of review). Review of a denial of conscientious objector status is reviewed under the even more deferential "basis in fact" standard. <u>United States ex rel. Barr v. Resor</u>, 443 F.2d 707, 708 (D.C. Cir. 1971). This standard has been called the "narrowest review known to the law." <u>See</u> <u>Woods v. Sheehan</u>, 987 F.2d 1454, 1456 (9th Cir. 1993).

The courts must "show 'extreme reluctance to interfere' in matters of military personnel where the military has lawfully exercised its discretion." <u>Reinhard v. Gorman</u>, 471 F. Supp. 112, 113 (D.D.C. 1979) (quoting <u>Dilley v. Alexander</u>, 603 F.2d 914, 919 (D.C. Cir. 1979). On judicial review, the Court does not weigh the evidence or test whether substantial evidence supports the military's position. <u>Witmer v. United States</u>, 348 U.S. 375, 380-81 (1955). Instead, the court must "search the [administrative] record for some affirmative evidence to support the local board's overt or implicit finding." <u>Dickinson v. United States</u>, 346 U.S. 389, 396 (1953).

There is no constitutional right to conscientious objector status, <u>Gillette v. United States</u>, 401 U.S. 437, 460-61 (1971) <u>see also</u> <u>In re Summers</u>, 325 U.S. 561 (1945) (While under § 5 (g) of the Selective Training and Service Act, supra, conscientious objectors to participation in war in any form now are permitted to do non-war work of national importance, this is by grace of Congressional recognition of their beliefs). Nor is there a statutory right to conscientious objector status.[3] For voluntary enlistees such as SPC Aguayo, "discharge [of a conscientious objector] from military service is available only because of a privilege granted by the executive branch of

---

[3] 50 U.S.C. App 456(j) (the Selective Service statutes) exempt Conscientious Objectors from induction into the service, however, for volunteers, such as petitioner, Conscientious Objector status is provided by regulation only.

the federal government...." See Nurnberg v. Froehlke, 489 F.2d 843, 849 (2d Cir. 1973); United States v. MacIntosh, 283 U.S. 605 (1931); DeWalt v. Commanding Officer, 476 F.2d 440, 442 (5th Cir. 1973); Brooks v. United States, 147 F.2d 134 (2d Cir.) cert. denied, 324 U.S. 878 (1945).

"The courts are ill-equipped to resolve controversies arising from the use of discretionary powers specifically designed to provide military authorities with the freedom and flexibility needed to establish and maintain a well-trained and well-disciplined armed force." Dilley v. Alexander, Jr., 603 F.2d 914, 920 (D.C. Cir. 1979) (internal citation omitted); see also Nicholson v. Brown, 599 F.2d 639, 646 (5th Cir. 1979)(citing Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971)) (Military personnel decisions under facially "nonmandatory" military regulations are not subject to judicial second-guessing and are merely reviewed for arbitrariness.) .

The DACORB's rejection of an applicant's request for a conscientious objector discharge is subject to review in federal court by way of habeas corpus proceedings, however, the scope of such review is "severely limited." Silverthorne v. Laird, 460 F.2d 1175, 1179 (5th Cir. 1972). The Board's judgment must be sustained if the court can discern any "basis in fact" for it. Id. (citing Estep v. United States, 327 U.S. 114, 122, (1946)); see also Nicholson 599 F.2d at 646 (The touchstone used to measure arbitrariness is whether the decision had any "basis in fact", the "narrowest standard of review known to the law.")

**B. Specialist Aguayo Failed to Meet His Burden of Proof to Establish That His Beliefs Warranted Discharge as a Conscientious Objector.**

The DACORB considered SPC Aguyao's application with all supporting documentation, the recommendations of his chain of command, the investigating officer's report of investigation,

7

the chaplain's report, the mental status evaluation, his personnel file, and his rebuttal paperwork. After reviewing all of the considerable evidence in this case, the DACORB concluded that SPC Aguayo had not established status as a CO by clear and convincing evidence. The board's decision was not arbitrary, had more than a sufficient basis in the facts of record, and should therefore be upheld.

The Army has established a procedure for the evaluation of CO claims. That procedure provides that military personnel will exercise their discretion in determining whether the soldier has met his burden of establishing CO status by clear and convincing evidence. Under 32 C.F.R § 75.5, the Army may discharge a conscientious objector who meets the following three requirements with clear and convincing evdience: (1) the applicant is conscientiously opposed to participation in war in any form; (2) the applicant's opposition is founded on religious training and beliefs; and (3) the applicant's position is sincere and deeply held. See also, Gillette v. United States, 401 U.S. 437 (1971); Welsh v. United States, 398 U.S. 333 (1970); United States v. Seeger, 380 U.S. 163, (1965); Witmer v. United States, 348 U.S. 375 (1955); Silverthorne v. Laird, 460 F.2d at 1179; AReg 600-43, ¶ 1-7.

Based on the evidence of record, the DACORB properly concluded that SPC Aguayo did not demonstrate grounds for discharge by clear and convincing evidence. SPC Aguayo's asserted beliefs do not satisfy the Army's criteria for discharge due to conscientious objection. The record includes numerous facts that support the denial by the DACORB.

Army Regulation 600-43 ¶ 1-7(b) states "Relevant factors that should be considered in determining a person's claim of conscientious objection include training in the home and church; general demeanor and pattern of conduct; participation in religious activities; whether ethical or

moral convictions were gained through training, study, contemplation, or other activity comparable in rigor and dedication to the processes by which traditional religious convictions are formulated; credibility of persons supporting the claim." Petitioner's application does not identify any religious training or belief that would justify conscientious objector status. See AR 95-106. Specialist Aguayo's beliefs do not appear to be grounded in religious principles or developed through activity comparable in rigor and dedication to the process by which traditional religious convictions are formulated. AR 0073. Evidence also suggests that petitioner may have entered the Army with the same beliefs he has now, which – as stated in the regulation – is not considered favorable. See AR 0073; Army Reg 600-43, 1-7.a.(1).

During the interview with the IO, SPC Aguayo told him that he thought his work as a soldier and medic would be "performing humanitarian missions." AR 0083. While this may be true, it does not support his argument directly since he voluntarily enlisted in the United States Army as a soldier in the post-September 11, 2001 era. At SPC Aguayo's request, CPT Foster also interviewed SPC Lopez. Although SPC Lopez said he felt SPC Aguayo was sincere, he said "Aguayo seemed very uncomfortable handling his weapon and did not want to shoot his weapon during training for OIF-2 **unless he absolutely had to."** AR 0084 emphasis added. SPC Aguayo's own witness' statement that SPC Aguayo would fire his weapon under certain conditions corroborates the questionable firmness of SPC Aguayo's beliefs.

There is additional affirmative evidence in the record that casts doubt on the sincerity and firmness of SPC Aguayo's beliefs. His opinions were not formed, or even considered for that matter, until after he learned that his unit was activated for service in Iraq. See AR 0073. SPC Aguayo also did not highlight any actions in support of his new beliefs other than pursuing

discharge from the military. AR 0073. Despite petitioner's allegations, the record demonstrates that in June 2005, SPC Aguayo still fired his weapon at the firing range and he did not raise a single objection to doing so. Ex. C. Clearly, the DACORB had an extensive packet that provided the necessary basis in fact to support its denial of SPC Aguayo's application.

In addition, there is a factual basis to question the sincerity of SPC Aguayo's beliefs.[4] First, petitioner's timing of his application is suspect. He enlisted in the Army after a religious upbringing, and with full knowledge not only that the Army's mission is to defend this nation, but also that hostilities flowing from the September 11, 2001 attacks had already begun. AR 97. Shortly after arriving at his unit, and after the unit was informed of a pending deployment, petitioner applied for CO status. See AR 0047, 0073. Coincidentally, this was during the same time period that his friend also applied for CO status. AR 0047. While timing alone is not enough to deny an application, AReg 600-43, 1-7.a.(5)(c), it certainly is evidence that supports the denial.

Additionally, Specialist Aguayo states that he enlisted in the Army because of financial burdens associated with educational expenses. AR 96-97. The beliefs Specialist Aguayo asserts all arose prior to his enlistment. AR 95-100. The obligation of the conscientious objector is to give timely notice of his reservations. ARegulation 600-43 ¶ 1-7(a)(1). A true conscientious objector who hides his beliefs to obtain the benefits of military service are not allowed to then claim CO status when called to serve. See Nurnberg v. Froehlke, 489 F.2d 843, 847 (2d Cir.

---

[4]SPC Aguayo apparently continues to struggle to this day with the firmness of his beliefs. In his amended petition, it states that if he "is required to continue to serve in the United States Army, he will have to choose between participating in the military and following the deeply-held beliefs which guide his life." Am. Petition. at ¶ 47. Petition at ¶ 43. SPC Aguayo appears to still question the nature of his beliefs.

1973).  (There is no "national policy" that we know of which permits the true conscientious objector to hide his beliefs in order to obtain the advantages of a commission, and then when called to serve, suddenly to advert to his conscience.)

SPC Aguayo has received ample process, but now the time has come for him to follow-through with the remaining service obligation which he voluntarily entered into.  His unit and country are in need of his service.  The DACORB properly determined that SPC Aguayo failed to meet his burden to establish a claim to conscientious objector status.  His stated beliefs do not satisfy the criteria for CO classification under AReg 600-43.

### B.    The Army Followed Its Regulation In Reviewing His CO Application

While SPC Aguayo has exhausted intra-service corrective measures, his claim that the Army violated its own regulations is tenuous at best.  SPC Aguayo clearly disagrees with the decision of the DACORB, however he has not demonstrated that the DACORB failed to follow the appropriate procedures in evaluating his claim.  In his amended petition, SPC Aguayo argues that he possesses the beliefs of a conscientious objector.  However, he has failed to demonstrate how the board did not follow the clear procedures as outlined above for concluding that he failed to prove by clear and convincing evidence that he is a CO.

SPC Aguayo alleges that the Army violated its regulations because the denial was "unsupported by any stated reason, as required by ARegulation 600-43, ¶ 2-8.d(3)."  Amended Petition ¶ 46.  However, the memorandum in question states that petitioner "did not present clear and convincing evidence," which is entirely consistent with the regulation.  AR 0044.  The memorandum also confirms that the DACORB considered the entire application and packet, which included petitioner's rebuttal and all documents associated with the application.  AR 0044.

Essentially, petitioner asks this Court to find that the Army is not interpreting its own regulation properly.  See AReg 600-43, 2-8.d.(3).  As previously stated, there is no Constitutional or statutory requirement for conscientious objector applications to be processed.  However, contrary to petitioner's interpretation, the Army interprets the memorandum, dated January 30, 2006, as satisfying the regulatory requirement to provide "reasons" for the denial.

However, if this Court determines it needs additional "reasons" because of the unique circumstances of this case, the DACORB issued a more detailed memorandum on March 24, 2006.  Ex. B.  This supplemental memorandum outlines even more specific areas that the DACORB focused on and lists why the DACORB denied petitioner's application.  Specifically, the DACORB noted the following:

- Applicant lacks the religious foundation; the underpinning that supports Conscientious Objector beliefs

- Applicant has not provided any significant source of his beliefs; conscience or moral views that would warrant Conscientious Objector status

- It appears that applicant held beliefs prior to entry to the Army.  Although these could have crystallized after entry, it still appears that these beliefs were considerable prior to entry with no significant identification of these beliefs at entry to the Army

- Questionable timing of the application just prior to unit deployment

Although not required by the regulation, clearly, these points provide the required "reasons" for denial of the petition.[5]

---

[5] However, if the Court were to find even these additional reasons as insufficient, the remedy is to remand the matter to the DACORB for further development of the record, not to grant the Petitioner CO status.

## **CONCLUSION**

SPC Aguayo has failed to demonstrate that he has a claim subject to the Court's review. Moreover, the Army's decision to deny SPC Aguayo's application for CO status was not arbitrary and had more than ample basis in fact. His petition for a writ of habeas corpus should therefore be denied.

Respectfully Submitted,

_____
KENNETH L. WAINSTEIN., D.C. Bar #451058
United States Attorney


_____
RUDOLPH CONTRERAS D.C. Bar No. 434122
Assistant United States Attorney


_____
KEVIN K ROBITAILLE
Special Assistant U.S. Attorney
555 Fourth Street, N.W., 10th Floor
Washington, D.C. 20530
(202) 353-9895


OF COUNSEL:
LIEUTENANT COLONEL JOSEPH C. FETTERMAN
MAJOR CHRISTOPHER P. SOUCIE
Department of the Army
U.S. Army Litigation Division
901 North Stuart Street, Suite 400
Arlington, VA 22203-1837
703-696-1626