UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AUGUSTIN AGUAYO | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
|     v. | ) CA No. 05-1580 (EGS) |
| | ) |
| DR. FRANCIS J. HARVEY, | ) |
|   SECRETARY OF THE ARMY | ) |
|     Respondent. | ) |
| | ) |

**RESPONDENT'S REPLY TO PETITIONER'S TRAVERSE TO RESPONDENT'S OPPOSITION TO PETITION FOR A WRIT OF HABEAS CORPUS**

**INTRODUCTION**

Petitioner offers three arguments in his Traverse in support of his application for Writ of Habeas Corpus. All are without merit and Petitioner's application should be denied. The issue before the Court is not whether the Administrative Record could support a finding that petitioner qualifies as a Conscientious Objector or even if the Court would so find based on this record. To the contrary, the issue before the Court is whether or not there is a "basis in fact" for the decision of the Department of the Army Conscientious Objector Review Board (DACORB or Board).

Petitioner argues that the DACORB's stated reasons are insufficient, that the arguments put forth are post hoc rationalizations of counsel for respondent, and that in petitioner's counsel's view, petitioner satisfies the criteria for a conscientious objector. All three of the objections ignore the Administrative Record and distort the burden of proof applicable in this case.

"We must bear in mind that when a person enters into a contractual commitment with the government to serve his country, it is anticipated that he will fulfill his promise." Roby v. U.S. Dep't. of the Navy, 76 F.3d 1052 (9th Cir. 1996) (quoting Sanger v. Seamans, 507 F.2d 814 (9th

Cir. 1974). However, for the good order and discipline of the Army, "[t]he government not only has an interest in granting discharges to sincere conscientious objectors but also has an equal interest in preventing misuse of these procedures as a backdoor out of military service." Id. Because of this, the Army has a vested interest in investigating and making decisions on all the available information. This is what has occurred here, by a 2-1 vote the DACORB decided that the Petitioner failed to meet his burden and therefore denied his application. The record clearly has a basis in fact to support this decision.

### I. Respondent's Stated Reasons Satisfy the Regulatory Requirement to Notify Petitioner of the Reason for Denial

Petitioner states that the Army violated its "regulation when it failed to include in the record its reason or reasons for denying Mr. Aguayo's application." Traverse p. 14. As provided, the DACORB clearly stated its reasoning succinctly. AR 89. Army Regulation 600-43 states that "[i]f a determination by HQDA that the person's request is disapproved, the reasons for this decision will be made part of the record." AReg 600-43, ¶ 2-8.d.(3).

In reviewing the DACORB's interpretation of the Army's regulations, this Court should accord even more deference to that decision than would be required by Chevron for statutory interpretation. See Consarc Corp. v. Treasury Dep't, 71 F.3d 909 (D.C. Cir 1995) (agency interpretation of rule is due more deference than agency interpretation of authorizing statute). Reviewing courts should accord an agency's interpretation of its own regulations a "high level of deference," and defer to that interpretation "unless it is plainly wrong." General Carbon Co. v. OSHRC, 860 F.2d 479, 483 (D.C. Cir. 1988); see also Auer v. Robbins, 519 U.S. 452, 461

(1997) (holding that an agency's interpretation of a rule is "controlling unless plainly erroneous or inconsistent with the regulation"). This standard of deference requires a court to defer to an agency's interpretation of a rule even when that interpretation diverges from what a first-time reader might conclude was the "best" interpretation of the regulation. Gen. Elec. Co. v. EPA, 53 F.3d 1324, 1327 (D.C. Cir. 1995). Even when a plaintiff offers a more plausible interpretation of a regulation, it is the "agency's choice [that] receives substantial deference." Id. (quoting Rollins Envtl. Serv. Inc. V. EPA, 937 F.2d 649, 652 (D.C. Cir. 1991)). Thus, if the Army's interpretation of its regulations is a plausible interpretation of the plain language of those regulations, then this Court should defer to the DACORB's decision.

The Army interprets the requirement to provide reasons as met by what the DACORB provided. AR 89. As other courts have held, the DACORB need not provide an exhaustive list, but simply a reason and the review by the courts is whether the "record reveals 'some proof that is incompatible with the applicant's claim'" See Roby v. U.S. Dep't of the Navy, 76 F.3d 1052, 1058 (9th Cir. 1996), citing Woods v. Sheehan, 987 F.2d 1454, 1456 (9th Cir. 1993). Again, due to the deference owed to the military in its personnel decisions and interpreting its regulations, this is the "narrowest review known to the law." Woods at 1456.

The Army's interpretation is reasonable. As the D.C. Circuit Court observed regarding the reasons supplied by a local selective service board:

> Without giving a detailed explication of its reasons, the Board denied the classification. It would certainly have been better if the Board had pinpointed, as best it could, why it concluded that Gruca was not "by reason of religious training and belief * * * conscientiously opposed to participation in war in any form." For reasons we have already discussed, however, we do not think it appropriate to require a local board to adhere to any particular formula in reporting its decisions. It is enough if there is evidence in the record from which we can garner the basis

of the Board's action, and we are satisfied of being able to do so here.

Gruca v. Secretary of Army, 436 F.2d 239, 245 (D.C. Cir. 1970).

Petitioner further alleges "the DACORB obviously did not rely on the findings and recommendation of the officer appointed to investigate Mr. Aguayo's claim." Traverse p. 18. However, unlike the individual investigating officer who is probably only involved in one CO application, the DACORB is a special board for the Army which has much greater experience and expertise in evaluating the entire record. If the process operated as Petitioner has indicated, there would be no need to have the DACORB because it could stop simply with the investigating officer.

Petitioner places considerable emphasis on his claim that "Every officer who actually interviewed Mr. Aguayo concerning his conscientious objector beliefs found him to be sincere." Traverse p. 7. Petitioner goes on to claim that petitioner's Battalion Commander, LTC Jeffrey A. Sinclair "never interviewed Mr. Aguayo concerning his beliefs; he offered no basis for his comments." Traverse p. 8. These assertions are factually inaccurate. Lieutenant Colonel (LTC) Sinclair, petitioner's Battalion Commander interviewed Specialist Aguayo for approximately one hour in LTC Sinclair's quarters and also met with petitioner to inform him of his recommendation. Attachment 1, declaration of LTC Jeffrey A. Sinclair.

Petitioner also argues that the memorandum from the Board President, Exhibit B to the Opposition, is improper. Despite petitioner's claim, the memorandum is indeed part of the record. Because of the unique situation in this case with the investigating officer recommending approval and the Board disapproving the application, the Board decided to provide further reasons as to why it denied the application. The evidence on which the Board based its decision

4

was in the administrative record.  This memorandum, similar to the original memorandum, see AR 89, was not evidence considered by the DACORB but the reason why the DACORB denied the application.

### II. The Reasons for Denial Offered in Respondent's Opposition Are Clearly Established in the Administrative Record

The DACORB voted 2-1 to deny petitioner's application with the Chaplain and the Board President voting to deny the application.  AR 88-90.  Both of the Board members who voted to deny the application noted their reasons for denial.  AR 88.  Petitioner criticizes those board members, specifically the Chaplain, for not being as articulate as counsel for petitioner would like.  Traverse p. 15[1].  However, the Chaplain's notes show a concern with the firm, fixed nature of petitioner's beliefs and state that the Chaplain was not persuaded by clear and convincing evidence that petitioner's stated beliefs fit the criteria for a 1-0 conscientious objector found in AReg 600-43.  AR 88.  Likewise, the Board President stated that the petitioner had not demonstrated by clear and convincing evidence a firm fixed belief.  These stated reasons are clearly established in the Administrative Record.

> The criteria found in Army Regulation 600-43 for a Conscientious Objector are:
>
> A firm, fixed and sincere objection to participation in war in any form or the bearing of arms, because of religious training and belief. Unless otherwise specified, the term "conscientious objector " includes both 1–0 and 1–A–0 conscientious objectors.
>
> a. Class 1–A–0 conscientious objector.

---

[1] Petitioner's suggestion that the second sentence was added at a later date or by another individual is baseless and should be ignored by this Court.

> A member who, by reason of conscientious objection, sincerely objects to participation as a combatant in war in any form, but whose convictions are such as to permit military service in a non–combatant status.
>
> b . Class 1–0 conscientious objector . A member who, by reason of conscientious objection, sincerely objects to participation of any kind in war in any form.

Based on the above definition the DACORB must determine that the petitioner is conscientiously opposed to participation in war in any form; that the petitioner's opposition is founded on religious training and beliefs; and that the petitioner's position is sincere and deeply held. Failure to meet any of these standards means that the applicant has not established that he meets the criteria for a 1-0 CO.

    Specialist Aguayo's beliefs do not appear to be founded on religious training and beliefs. Petitioner alleges that he identified a moral view that does not allow him to take the life of another, that human life and preserving it is of the utmost importance, that every human being has some value and that whether someone's life should end is the exclusive province of a higher force. Traverse p. 21-22. Petitioner alleges that the basis for these beliefs is his religious upbringing from his Catholic Mother and Jehovah's witness and pacifist Father. Traverse p. 23. However, this contradicts petitioner's claim that he did not enter the service holding the views he now claims make him a 1-0 CO. Traverse p.25-26. Petitioner provides no basis for the moral views he claims to hold. If the regulation's terms "religious training and beliefs" are to be given any meaning, then petitioner's application must be denied. Additionally the timing of petitioners application, on the eve of deployment, certainly gives the Board ample reason to doubt the veracity of petitioner's claims of a sudden revelation or crystalizing of beliefs supposedly formed in childhood. See e.g. Gruca v. Secretary of Army, 436 F.2d 239 (D.C. Cir. 1970) (Selective

Service Board entitled to infer a lack of sincerity based on totality of circumstances even when no one fact was conclusive).

The evidence that the Board relied on in questioning the firm, fixed nature of petitioner's beliefs is ample.  The decision by the DACORB was not based on any one item or fact, but instead based on the entire record and all the circumstances.  Specialist Lopez, a witness identified by petitioner stated "Aguayo seemed very uncomfortable handling his weapon and did not want to shoot his weapon during training for OIF-2 **unless he absolutely had to."**  AR 0084 emphasis added.  To qualify as a 1-0 CO, an applicant must be opposed to participation in war in any form.  While a reluctance to fire a weapon unless absolutely necessary may not make someone an ideal soldier, the willingness to fire a weapon, if absolutely necessary, is inconsistent with an application for 1-0 CO status.  Specialist Lopez did not qualify what he meant by "absolutely had to," but there is no support in the record for petitioner's contention that this was limited to avoiding punishment for failure to follow an order.  Traverse p. 27[2].

**III. The Board's Decision is reasonable based on the Evidence in the Administrative Record**

The burden is on the petitioner to show that he is entitled to CO status.  When determining if the petitioner met his burden, "the Court must show utmost deference and affirm as long as the record reveals 'some proof that is incompatible with the applicant's claims.'" Benjudah v. Harvey, No. C 05-00399 WHA (N.D. Ca. 2005)(unpublished) (attachment 2), quoting Koh v. Secretary of the Air Force, 719 F.2d 1384, 1385 (9th Cir. 1983).

---

[2] Petitioner alleges that the Respondent argued that petitioner was insincere because of the willingness to fire if absolutely necessary.  Respondent actually argued that petitioner's belief was not sufficiently firm to qualify as a 1-0 CO if he would fire a weapon if "he absolutely had to."

Applications for CO status are often close calls for the DACORB and the chain of command.  However, this Court is not in the position to determine if the chain of command and the DACORB were correct, but only whether there was a basis in fact for the decision that was made.  Clearly, the administrative record has many items to consider, but the DACORB carefully reviewed the entire record and denied Petitioner's application.  Petitioner's argument's contained in his Traverse are nothing more than an alternate interpretation of the evidence in the Administrative Record.  It is not Petitioner's interpretation at issue in this case, it is the DACORB's.  Clearly the Adminstrative Record provides a basis in fact for the DACORB's decision.

**IV.  If This Court Determines There Was No Basis In Fact For The DACORB To Deny The Application, Remand To The DACORB Is The Appropriate Solution**

Even if this Court determines that there was no basis in fact for the DACORB to deny Petitioner's application, the proper procedure would be to remand the application to the DACORB with guidance on what is required.  See <u>United States ex rel. Coates v. Laird</u>, 494 F.2d 709, 711 (4th Cir. 1974).

       Respectfully Submitted,

       _____
       KENNETH L.  WAINSTEIN., D.C.  Bar #451058
       United States Attorney

       _____
       RUDOLPH CONTRERAS D.C. Bar No.  434122
       Assistant United States Attorney

                                                                                         _____  
KEVIN K ROBITAILLE  
Special Assistant U.S. Attorney  
555 Fourth Street, N.W., 10th Floor  
Washington, D.C. 20530  
(202) 353-9895  

OF COUNSEL:  
LIEUTENANT COLONEL JOSEPH C. FETTERMAN  
MAJOR CHRISTOPHER P. SOUCIE  
Department of the Army  
U.S. Army Litigation Division  
901 North Stuart Street, Suite 400  
Arlington, VA 22203-1837  
703-696-1626