UNITED STATES DISTRICT COURT
DISTRICT OF THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AGUSTÍN AGUAYO, | : | |
| Petitioner, | : | |
| v. | : | No. 05-1580 (EGS) |
| DR. FRANCIS J. HARVEY, Secretary of the Army, | : | |
| | : | |
| Respondent. | | |

PETITIONER'S REBUTTAL TO RESPONDENT'S REPLY
TO PETITIONER'S TRAVERSE TO RESPONDENT'S OPPOSITION
TO PETITION FOR A WRIT OF HABEAS CORPUS

Agustín Aguayo[1] has petitioned this Court under 28 U.S.C. § 2241 for a writ of habeas corpus requiring the Army to discharge him as a conscientious objector. After the respondent ("Army") filed its opposition, the administrative record, Army Regulation ("AReg") 600-43, and a letter from the president of the Army's Conscientious Objector Review Board (DACORB), the petitioner filed his traverse, to which the respondent replied on May 18, 2006. That reply argues that the Army's denial letter complied with the reasons requirement of AReg 600-43, Army rep. 2-4, that the petitioner's traverse contradicts Mr. Aguayo's application for discharge, *id.* 6, that Mr. Aguayo failed to meet the regulation's "religious training and beliefs" requirement, *id.* 6 (sic), and that witness testimony to the effect that Mr. Aguayo was unwilling to fire a weapon during training "unless absolutely necessary" supports the Army's denial. *Id.* 7. None

---

[1] Respondent continues to spell the petitioner's first name incorrectly.

of these arguments is persuasive. For the reasons previously discussed in the petitioner's traverse, Mr. Aguayo is entitled to habeas relief because there is no lawful basis in fact in the record to support the Army's denial of his application for discharge as a conscientious objector. The respondent has also attempted to submit evidence outside the record to counter a claim made by the petitioner that is fully supported by the record. Because the Court's consideration of this petition for writ of habeas corpus is limited to the administrative record, the Court should disregard this evidence.

      a.    <u>The Army failed to follow its own regulation.</u>

For the reasons discussed in the petitioner's traverse, the Army violated its own controlling regulation when it failed to include in the administrative record its reason or reasons for denying Mr. Aguayo's application. Trav. 14-20. In its reply, the Army contends that the DACORB's denial letter complies with the Army's interpretation of its own regulation, and must therefore be given deference "unless it is plainly wrong." Army rep. 2-3. The respondent's arguments do not stand up to scrutiny.

First, while an agency's interpretation of its own regulation is entitled to deference "unless it is plainly wrong," *General Carbon Co. v. OSHRC*, 860 F.2d 479, 483 (D.C. Cir. 1988), the respondent has have cited no Army manual or other agency document to support its claim that the Army, as an agency, has interpreted its regulation in this way. Just because the DACORB gave a boiler plate reason both times it denied Mr. Aguayo's application does not mean that it was following the Army's official interpretation of this regulation. Second,

even if the Army has officially interpreted the "reasons" requirement of AReg 600-43 to permit a boilerplate reason that gives no meaningful information either to the applicant or a reviewing court, then that interpretation is "plainly wrong."

The Army's purported interpretation is "plainly wrong," because it renders the "reasons" requirement a nullity. Telling an applicant that his claim was denied because he failed to meet his burden of proof provides no more information than simply telling him that his claim was denied. After all, if the applicant *had* met his burden of proof, his application would have been granted. Contrary to the respondent's claim, *Gruca v. Secretary of the Army,* 436 F.2d 239, 245 (D.C. Cir. 1970), does not support its argument. Although *Gruca* approved a draft board's (not the Army's) failure to give a reason for denying a CO classification, it did not base its ruling on an interpretation of a Selective Service regulation similar to AReg 600-43. In 1970, when the Court of Appeals decided *Gruca,* Selective Service regulations had no reasons requirement. See *Fein v. Selective Service System,* 405 U.S. 365, 378 (1972) (noting that regulation requiring draft boards to state reasons "were promulgated effective December 10, 1971").

As discussed in the petitioner's traverse, the respondent's failure make its reasons for denying Mr. Aguayo's application a part of the administrative record violates AReg 600-43. Trav. 14-20.[2]

---

[2] Although the respondent claims that the DACORB president's March 24, 2006, letter is "part of the record," Army rep. 4, it does not argue that that letter contains the DACORB's actual
continued …

      b.    <u>The traverse does not contradict Mr. Aguayo's CO application.</u>

The respondent argues that the petitioner's traverse "contradicts [his] claim that he did not enter the service holding the views he now claims make him a 1-O CO," Army rep. 6, because the traverse "alleges that the basis for these beliefs is his religious upbringing from his Catholic Mother and Jehovah's witness and pacifist Father." *Id.* The respondent's argument is less than convincing. There is no contradiction.

The petitioner has never claimed that he shared his father's pacifist views when he enlisted. What he has said is that he received some religious training as a child from his pacifist father. *See* Trav. 21-23. While that training gave Mr. Aguayo some moral qualms when he enlisted, his concerns were neither "firm" nor "fixed." At that time, he believed that he could resolve his qualms in a way that would allow him to fulfill his obligation to the Army. *Id.* 23. Mr. Aguayo was therefore not a CO when he enlisted. It was Mr. Aguayo's experiences in the Army that caused those beliefs to crystallize into qualifying beliefs. *Id.* The traverse does not contradict Mr. Aguayo's application for discharge.

---

(... continued)
reasons. *See* Army rep. 2 (citing AR 89 – the DACORB denial letter – as the reasons provided by the Army). In any event, it is clear that the March 24 letter is not part of the record. First, it is not included in the Bate-stamped administrative "record" which the respondent filed with this Court. Instead, it was submitted as a separate exhibit. This exhibit is a letter that was prepared by the president of the DACORB *after* the petitioner filed his amended petition. It is thus clear that the letter was prepared as a response to this litigation – not in the course of the DACORB's handling of Mr. Aguayo's application for discharge.

      c.    <u>Mr. Aguayo's application is based on religious training and belief.</u>

Next, the respondent contends that "Petitioner provides no basis for the moral views he now claims to hold," Army rep. 6, and that because of that, "[i]f the regulation's terms 'religious training and beliefs' are to be given any meaning, then petitioner's application must be denied." *Id.* This argument does not withstand even minimal scrutiny.

First, the words "religious training and beliefs" are not "terms" found in the regulation. One of the key concepts used in the regulation is "religious training and belief" (the word "belief" is singular, not plural). That expression is defined in the Glossary section of AR 600-43,[3] and as defined, in fact requires no "training" at all. All it requires is either a "Belief in an external power or deeply held moral or ethical belief, to which all else is subordinate or upon which all else is dependent, and which has the power or force to affect moral well-being." The definition requires no proof of any formal or even informal "training," although an applicant's beliefs must be "the product of a conscious thought process resulting in such a conviction as to allow the person no choice but to act in accordance with them." For the reasons stated in the petitioner's traverse, Mr. Aguayo's stated beliefs meet this definition. *See* Trav. 21-26. Because the respondent has not shown otherwise, not further reply is needed.

---

[3] That definition, in turn, is taken from *United States v. Seeger,* 380 U.S. 850 (1965), and *Welsh v. United States*, 398 U.S. 333 (1970).

      d.    <u>Specialist Lopez's testimony does not support the Army's denial.</u>

Next, the respondent argues that the petitioner's traverse did not undercut its argument that Army's denial of Mr. Aguayo's application for discharge is supported by the following testimony of Specialist Lopez: "'Aguayo seemed very uncomfortable handling his weapon and did not want to shoot his weapon during training for OIF-2 unless he absolutely had to.'"  Army rep. 7 (quoting from AR 0084; emphasis supplied by respondent).  Once more, the respondent's argument misses the mark.

In his traverse, the petitioner misunderstood the respondent's argument to be that Mr. Aguayo must be insincere, because he was willing to fire his weapon "if he absolutely had to."  Trav. 27.  The respondent now makes clear that it does not contend that that this testimony would support a finding of insincerity.  Army rep. 7.  Instead, it argues that this testimony calls into question the "firm[ness]" of Mr. Aguayo's beliefs.  *Id.* 7 n.2.  The argument goes, it seems, that even though Mr. Aguayo did not want to fire his weapon, the fact that he was willing to fire during a training exercise it if "he absolutely had to," shows that his convictions are not sufficiently "firm."  This argument does not stand up to scrutiny, either.

In his traverse, the petitioner argued that no inference of insincerity could be drawn from Mr. Aguayo's failure to refuse to fire his weapon during a training exercise that occurred prior to his submitting his application for discharge, because no one should be required to risk prosecution to demonstrate sincerity.  Trav. 28.  In its reply, the respondent argues that "there is no

- 6 -

support in the record for petitioner's contention that this was limited to avoiding punishment for failure to follow an order." Army rep. 7. The respondent suggests no other plausible interpretation. Indeed, there is none. The only time Mr. Aguayo would "absolutely ha[ve] to" fire a weapon during a training exercise would be when he was directly ordered to do so, under threat of court martial.[4] Mr. Aguayo's commitment to obeying the law as well as his conscience (at least where he was not required to take any action that actually puts another person's life in danger) is no reason to question the firmness of his religious beliefs against participation in war any more than it would be to question his sincerity.

e.  This Court should not tolerate the respondent's repeated attempts to supplement the record.

Finally, the respondent attempts to submit evidence outside the record to counter the petitioner's claim (supported by the record) that every officer who actually interviewed Mr. Aguayo concerning his conscientious objector beliefs found him to be sincere. *See* Trav. 7 (citing AR 0112). First, the respondent claims without any support from in or outside the record that members of the DACORB have greater expertise than Mr. Aguayo's investigating officer with respect to conscientious objection. Army rep. 4. The respondent also submits

---

[4] It seems highly unlikely that Spec. Lopez was referring to self-defense when he testified that Mr. Aguayo did not want to fire his weapon in a training exercise, "unless he absolutely had to." Nevertheless, if that is what Spec. Lopez meant, a willingness to kill in personal self defense is not a basis to deny a conscientious objector's application for discharge. See *Gillette v. United States,* 401 U.S. 437, 448 (1971). See also *Sicurella v. United States,* 348 U.S. 345, 389 n.* (1955) (noting government's concession that willingness to use force in self-defense is not a reason to deny conscientious objector status). Indeed, even a general lack of objection to using guns would not be disqualifying. A CO must be opposed to *participating* in *war*; his or her opinion about other types of violence or force may be relevant, but cannot be disqualifying.

the affidavit of LTC Sinclair. *Id.* As explained in the petitioner's response, in deciding a military conscientious objector habeas petition, this Court is limited to the considering the record that was before the DACORB. Trav. 19. Although the respondent has not contested this point, it continues to try to influence this Court improperly with evidence outside the record whenever the record does not support its position. This Court should not consider either the argument concerning relative expertise or LTC Sinclair's affidavit.

What evidence there is in the record tends to support a conclusion that the members of the DACORB that denied Mr. Aguayo's application on January 30, 2006, were not experts and had not served on the DACORB for very long. First, the chaplain member's finding that "SPC Aguayo does not demonstrate a clear, convincing evidence of a fixed, firm, and crystallized burden of proof," AR 0088, demonstrates not only that the DACORB has no expertise when it comes to conscientious objection, but that it does not even understand the concept of "crystallization."[5] Second, the DACORB that heard Mr. Aguayo's application after he filed his petition for writ of habeas corpus did not comprise the same members who heard his claim initially, 18 months earlier. *Compare* AR 0044 (July 30, 2004, decision signed by DACORB President, Colonel Donald W. Browne, Jr.) with AR 08 (January 30, 2006, decision signed by DACORB President Col. James H. Gant, Jr.). The DACORB that reheard Mr. Aguayo's application had served for less than a year and a half. There is no evidence of how

---

[5] "Crystallization," as that concept is used in the vocabulary of conscientious objector law, is the moment that an individual's beliefs became firm and fixed, it does not describe the applicant's burden of proof. See, *e.g., Dietrich v. Tarleton*, 473 F.3d 177, 179 (D.C. Cir. 1972).

many applications the DACORB considered during that time.  Nor has the respondent referred to any Army regulation or manual which provides for how long members of the DACORB serve or what training, if any, they must receive to serve on the DACORB.  While the DACORB has the authority to decide conscientious objector applications, there is no reason to believe that it has any particular expertise.

Because LTC Sinclair's affidavit is simply not part of the record in this case, this Court should not consider it.  Needless to say, Mr. Aguayo's recollection of his meeting with LTC Sinclair is quite different.  Should this Court be inclined to expand the record, the petitioner requests an evidentiary hearing at which Mr. Aguayo would be permitted to testify on this and any other matter affecting the evaluation of his claim.

## CONCLUSION

For the reasons explained in this rebuttal and the petitioner's previously-filed traverse, the Army's denial of Agustín Aguayo's application for discharge as a conscientious objector is not supported by valid reasons having a basis in fact in the record. The record shows that petitioner is, in fact, a genuine conscientious objector who is entitled to the discharge he sought. The Court should issue a writ of habeas corpus ordering the respondent to discharge the petitioner honorably as a conscientious objector forthwith.

Respectfully submitted,

Dated:  May 26, 2006

LOCAL COUNSEL:

s/ *James R. Klimaski*
JAMES R. KLIMASKI
(DC Bar No. 243543)
KLIMASKI & ASSOCIATES, P.C.
1819 L Street, NW, 7th Floor
Washington, DC  20036-3830

 (202) 296-5600
 (202) 296-5601 (facsimile)
 Klimaski@Klimaskilaw.com

s/*James H. Feldman, Jr.*
JAMES H. FELDMAN, JR. (PA Bar # 36345)
PETER GOLDBERGER (PA Bar #22364)
LAW OFFICE OF PETER GOLDBERGER
50 Rittenhouse Place
Ardmore, PA  19003

 (610) 649-8200
 (610) 649-8362 (facsimile)
 AELaw2@aol.com

Attorneys for the Petitioner