UNITED STATES DISTRICT COURT
DISTRICT OF THE DISTRICT OF COLUMBIA

AGUSTÍN AGUAYO,                          :

       Petitioner,                  :

v.                                       :   **No. 05-1580 (EGS)**

DR. FRANCIS J. HARVEY,                   :
Secretary of the Army,
                                         :
       Respondent.

## DECLARATION OF AGUSTÍN AGUAYO

Pursuant to 28 U.S.C. §§ 1746 and 2246, Agustín Aguayo declares, under penalty of perjury under the laws of the United States of America, that:

1. I am the petitioner in this case.

2. I have received orders from my command that on August 28, 2006, I will be deployed to Iraq in support of (ISO) the Global War on Terrorism (GWOT) for a minimum of 365 days. I have attached a copy of these orders to this declaration.

3. In this declaration under penalty of perjury, I explain why my religious beliefs will not permit me to participate in this or any war, even as a non-combatant, and why, under compulsion of conscience, I will risk court-martial and imprisonment rather than deploy.

4. My beliefs and morals come from a transformation as a direct result of my combined religious/family upbringing, military experience, and new experiences I've created and sought. Such as, I have surrounded myself with people who cherish life and peace. I have become an active member and

- 1 -

supporter of many peace organizations such as The Center on Conscience & War, Military Counseling Network, The Munich Peace Committee, and American Voices Abroad. I have overhauled my life with new practices such as the peaceful art of Yoga and meditation. As time progresses (it has been more than two and a half years since I became a CO) my beliefs have only become more firm and intense. I believe that participating in this (or any) deployment would be fundamentally wrong, and therefore I cannot and will not participate. I believe that to do so, I would be taking part in organized killing and condoning war missions and operations, even though I object, on the basis of my religious training and belief, to participating in any war. I have to take a stand for my principles, values, and morals and I must let my conscience be my guide. After all, I and no one else has to bear the consequences of my decisions or burden of neglecting my conscience.

  5. My understanding is that if I participated in this deployment I would be treated as a non-combatant and would not be required to carry a weapon. The Department of the Army has allowed me to remain in a non-combatant status until the Court decides my case. However, my unit will not respect that arrangement. Since the arrangement was agreed upon, I have been "counseled" (warned) twice for not bearing weapons and I am still subject to an Article 15 (a non-judicial punishment which could carry reduction of rank and loss of wages). I have attached to this declaration the counseling statement I received on July 24, 2006. I understand from my attorneys that the lawyer representing the Army in my habeas case has told my lawyers that the Army

will not require me to train with or use weapons pending the outcome of my case. However, my unit is not recognizing my non-combatant status. I have been told many times, "you have been denied, that's all that matters!" How can I deploy with these conflicts?

6. And even if I truly had non-combatant status, I have been to Iraq for Operation Iraqi Freedom II, and I know what to expect. I know what will be expected of me. And because of this first-hand knowledge, I simply cannot take part in this deployment. Some people might think that a fear of death is the number one reason for refusing to deploy. But that is not correct. I have to be true to myself and do what is right. Even though I deployed as a non-combatant in 2004-05 I still carry guilt from my participation. While there as a non-combatant, I was still required to do guard-duty, although I chose to carry only an unloaded gun. While there as a non-combatant, I was still required to patch-up, treat, and help countless soldiers for "sick-call" in order to facilitate their prompt return to combatant duties. While there as a non-combatant, I was asked to drive soldiers around on patrols, patrols which could have been deadly to Americans and Iraqis alike.

7. I regret involvement in those activities, because ultimately I was contributing to the war mission and enabling others to do what I oppose. By doing guard duty, appearing to be armed, even without bullets, I gave the false impression that I would kill if need be. I am not willing to live a lie to satisfy any deployment operation. By helping countless soldiers for "sick-call" as well as driving soldiers around on patrols I helped them get physically better and be

able to go out and do the very thing I am against – kill. This is something my conscience will not allow me to do. Although I myself did not pull the trigger, I now realize that what I did as a non-combatant nonetheless supported and enabled these missions.

8. I cannot carry that burden on my conscience. When you know better you do better. Therefore, this time I will not deploy. My conscientious objection applies to all forms and aspects of war. Even if I went there to do kitchen detail or scrub toilets I would still be supporting the very missions and operations I oppose. An Officer once explained to me how in his view the Army was like a huge machine made of many parts that all work together to achieve the desired outcome. I know this is true. If the outcome is killing I cannot be a part of the "machine." Since, I deployed once before, I know what I would have to do, and that is not acceptable for me. Before I deployed last time, I knew I could not possibly purposely cause someone physical harm. Back then, I was willing to deploy to a war zone while the Army considered my application for discharge as a conscientious objector, so long as I was not required to use or train with live weapons. Because of what I learned during that experience, I cannot be part of a war effort at all, even if it is only while my case is pending, and even if I am required only to perform as a non-combatant.

9. I also oppose war because I have seen first-hand the direct result of deployments to war zones. As a result of Operation Iraqi Freedom II, I have seen many veterans whose lives have been shattered. Many men came back with missing parts, and countless physical and emotional scars, such as Post

Traumatic Stress Disorder. I have personally seen my comrades come back to commit suicide, drink themselves to death, and develop a strong addiction to drugs. It is obvious to me that these men's lives were destroyed by war. What participation in war does to our own soldiers is another reason why war is fundamentally immoral and wrong.

10. In my last deployment, I witnessed how soldiers dehumanize the Iraqi people with words and actions. I saw countless innocent lives which were shortened due to the war. I still struggle with the senselessness of it all – Iraqi civilians losing their lives because they drove too close to a convoy or a check point, soldiers' being shot by mistake by their own buddies, misunderstandings (due to the language barrier) leading to death. This is not acceptable to me. It makes no sense that to better the lives of these civilians they must first endure great human loss imposed by others, and not by their own choice. That is immoral. This, too, is clear and convincing evidence to me that all war is evil and a harmful tool as an aid in solving problems.

11. The overwhelming message I obtained from my personal experiences is that all wars cause more devastation than benefit. The more time I spent there, the more evident it became to me that all wars are wrong. How can I be a perpetrator, culprit, and/or enabler of these operations? I cannot and will not. I would much rather suffer the consequences of missing a movement – prosecution by court-martial – than be part of any war activity. To participate in this deployment I would have to ignore my deep sense of responsibility to uphold my moral values. No human has the moral authority to decide when

it's acceptable to end another's life in this way. I am simply unwilling to serve in any military deployment capacity.

12. I have come to believe and understand that the purpose of our existence on earth is to value, cherish and conserve the miracle that is human life. To do so one must show each and every day through actions that nothing is of greater importance than the conservation of life. From the moment of our birth we inherit the precious gift of life, and it is natural to treasure this gift. It is natural to wish to preserve the lives of our human brothers and sisters, as well as one's own. It is not natural and not human to kill other humans. Whether we acknowledge it or not, to be willing to destroy human life is to have no respect for life at all and is a total failure of one's objective in life. Those that kill must accept the consequences beginning with the perpetual destruction of their own human spirit. The acceptance that they alone have caused so much devastation by killing is not only morally wrong but a failure to do what is naturally human – preserve life. A person who fails to understand our true purpose on earth is doomed to a life of emptiness, frustration and destruction. This is the only possible outcome when you kill. And I know that for this upcoming deployment, people will die and people will be killed. To be a part of any of it in any way is unacceptable to me. To support, enable, and/or put any effort towards these missions is not possible. Therefore, I will not deploy.

13. I have the utmost respect for Martin Luther King, Jr. I value and admire his legacy. He said in a speech against the Vietnam War:

> We still have a choice today: nonviolent coexistence or violent co-annihilation. We must move past indecision to action. We must

find new ways to speak for peace ... and justice throughout the developing world, a world without borders on our doors. If we do not act, we shall surely be dragged down the long, dark and shameful corridors of time reserved for those who possess power without compassion, might without morality, and strength without sight.

14. I have made my choice for peace, for humanity, and for a better tomorrow. Even though I understand that one of the consequences of refusing to deploy may possibly be a trial by court-martial and even my imprisonment, I cannot and will not deploy.

15. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
AGUSTÍN AGUAYO

Dated: August 10, 2006
At:    Schweinfurt, Germany

DEPARTMENT OF THE ARMY
Headquarters, 1st Armored Division
Unit 24309
APO AE 09096

ORDER # 06-019                                                                                  07 AUG 06

2nd Brigade Combat Team, 1st Infantry Division (FORCE PACKAGE 2A) (WAMZAA), 1st Armored Division, APO AE 09096

You are assigned and/or deployed as indicated below. Upon completion of the mission, you will return to your permanent home station.

ASSIGNED TO: USCENTCOM, OIF 06-08
PURPOSE: DEPLOYMENT ISO GLOBAL WAR ON TERRORISM (GWOT)
NUMBER OF DAYS: 365 days or UTC
WILL PROCEED DATE: o/a 26 AUG 06

**ACCOUNTING CLASSIFICATION:**

21 6 2020 0000 01-1100 P135198 21**/22**/25** VIRQ F9203 5570 S12120
APC: 6ZAG (OIF) DRN: GRP1FP2TK61285    CIC: 262016ZAG12120

21 7 2020 0000 01-1100 P135198 21**/22**/25** VIRQ F9203 5570 S12120
APC: 6ZAG (OIF) DRN: GRP1FP2TK61285    CIC: 272016ZAG12120

The following statement MUST be included and MUST immediately precede any fund citations provided to travel orders:

"THIS REQUIREMENT IS PROVIDED FOR IN THE FY07 FINANCIAL PLAN AND IS SUBJECT TO CONGRESS ENACTING APPROPRIATIONS"

MOVEMENT DESIGNATOR CODE: PM05/6

ADDITIONAL INSTRUCTIONS:
(1) This is a temporary change of station (TCS); units will be attached to TCS duty stations. Normal PCS entitlements and allowances and relocation of family members is not authorized. Consolidated Personnel Policy Guidance (PPG) for Operation Iraqi Freedom (OIF) entitlements are listed at the DCS, G-1 website: http://www.armyg1.army.mil/militarypersonnelpolicy.asp.
(2) Travel by POV/rental car is not authorized. POV storage is authorized; contact the local Installation Transportation Officer (ITO) for assistance.
(3) Soldier readiness processing will be accomplished prior to departure from losing installation/home station per AR 600-8-101. The gaining UMC will transfer the MPRJ and deployment packet to the deployment station PD. A copy of the promotion packet and the AAC-10 roster for soldiers who hold recommended list status to SGT and SSG will be properly filed and forwarded with the MPRJ when the MPRJ is transferred for temporarily reassigned soldiers. The original promotion packet should be retained by the losing PD. Medical and dental records will be transferred with the individual TCS soldier.
(4) If government quarters are available, they are directed. Soldier must get a statement of non-availability from the local housing office in order to be reimbursed for non-government quarters. Partial government meals are available and directed.
(5) Maximum use of Military Transport is directed. Commercial Transportation is authorized if military transport is unavailable.

ORDER # 06-019, HQ 1st Armored Division, APO AE 09096, 7 AUG 06

(6) Essential unit mess has been declared by the Assistant Secretary of the Army (Manpower and Reserve Affairs) for the mobilization and demobilization cites not to exceed 10 days. MOSQ location will provide quarters and mess. The installation commander will make separate determination as the availability of mess and quarters as a last resort will issue statement/certificate of non-availability. Per diem payable is $3.50 per day. Per diem will normally be paid for travel to the gaining station or replacement activity unless prohibited by travel circumstances.
(7) During period of deployment, gaining/deployed unit commander has responsibility for personnel service support to include awards and decorations, personnel strength accounting, UCMJ and all other forms of personnel and legal administration support except reserve component promotion authority.
(8) Soldiers may submit interim travel vouchers if otherwise entitled to per diem and/or travel. Soldiers must be informed to keep all required documents to support payments/requests for payments.
(9) Members are authorized a maximum of three (3) pieces of baggage, the combined weight is not to exceed authorized (duffel bag or C-Bag) each. Additionally, members are authorized one (1) small carry on. Deploying with load bearing equipment/TA-50 equipment and chemical protective gear are authorized excess baggage.
(10) Use of leave during this deployment is recommended for all soldiers.
(11) Additional movement requirements will be completed using amendment orders, format 700, movement to return to CONUS will also be completed using a format 700.
(12) You will bring only those items specified by the Personnel Policy Guidance or other appropriate authority. You will be provided a list of those items from your servicing personnel service center/company.
(13) Temporary storage of HHG is authorized for single soldiers, Soldiers married to another service member when both are deployed, soldiers married to another service member residing at a different permanent duty station, and soldiers who are single parents with a childcare plan that requires the dependent to leave the residence, may store HHG at government expense for the period of the contingency operation.
(14) Special Training Requirements: NONE
(15) Weapons Requirements: All weapons requirements, to include qualification, must be met prior to deployment; personnel are required to bring assigned M16/M4/M9. Soldiers are authorized to carry weapons on commercial aircraft for deployment/redeployment. Weapons will be stored in a weapons case and handled as checked baggage during the flight. If flying commercial carriers, soldiers must alert SATO that they will be carrying weapons on board the aircraft, to ensure the proper measures are taken to grant approval. Soldiers will not deploy with ammunition.
(16) Equipment Requirements: Soldiers will deploy with their assigned weapon, CTA-50, Kevlar helmet, Interceptor Body Armor, Individual Protective Equipment, Armed Forces ID card and ID tags, DCUs/ACUs, and individual equipment and clothing as outlined in the Packing List. Special equipment will be issued in theater as required.
(17) Official Passport Required: NO
(18) Visa Required: NO
(19) Mess Available: YES
(20) Lodging Available: YES
(21) Central billing Authorized.
(22) Personnel deploying must be qualified for overseas deployment. Theater Specific Individual Readiness Training (TSIRT – ANNEX T) will be conducted at Grafenwoehr Training Area (GTA), or local training areas in the 1AD footprint.
(23) IA must meet SRP dental CAT ½ criteria.
(24) Personnel complete ALL appropriate medical and dental screening/ immunizations prior to departure.
(25) Personnel deploy with 90 DOS of prescribed medications if applicable.
(26) Personnel requiring medical equipment, e.g. corrective eyewear, hearing aids, orthodontic equipment, must deploy with all required items in their possession, to include, as required, two (2) pairs of eyeglasses, protective mask eyeglass inserts and hearing aid batteries.
(27) MACOMs must ensure personnel receive country specific Antiterrorism awareness training prior to deployment and are aware of the threat level throughout the AOR.

ORDER # 06-019, HQ 1st Armored Division, APO AE 09096, 7 AUG 06

(28) Personnel will deploy in a TCS status with valid Armed Forces ID cards and orders.
(29) Excess baggage authorized.

FORMAT: 401

JOHN A. PEELER
LTC, GS
ACofS, G3

DISTRIBUTION:
Unit                                     (1)
PAS                                      (1)
RMO                                      (1)
CDR, 2BCT/1ID (WAMZAA)                   (1)
CDR, USAG SCHWEINFURT                    (1)
CDR, 1AD, APO AE 09096                   (1)
CDR, USAREUR, APO AE 09014               (1)
CDR, USCENTCOM                           (1)

3

# DEVELOPMENTAL COUNSELING FORM

For use of this form, see FM 22-100; the proponent agency is TRADOC

## DATA REQUIRED BY THE PRIVACY ACT OF 1974

**AUTHORITY:** 5 USC 301, Departmental Regulations; 10 USC 3013, Secretary of the Army and E.O. 9397 (SSN)
**PRINCIPAL PURPOSE:** To assist leaders in conducting and recording counseling data pertaining to subordinates.
**ROUTINE USES:** For subordinate leader development IAW FM 22-100. Leaders should use this form as necessary.
**DISCLOSURE:** Disclosure is voluntary.

## PART I - ADMINISTRATIVE DATA

| Name (Last, First, MI) | Rank/Grade | Social Security No. | Date of Counseling |
|---|---|---|---|
| Aguyao, Agustin, M. | SPC | 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 | 24 July 2006 |

| Organization | Name and Title of Counselor |
|---|---|
| HHC 1-18 IN BN (Medic Platoon) | Edgar Y. Luna, SFC USA, Medic Platoon Sergeant |

## PART II - BACKGROUND INFORMATION

**Purpose of Counseling:** (Leader states the reason for the counseling, e.g., performance/professional growth or event-oriented counseling, and includes the leader's facts and observations prior to the counseling.)

Event Oriented:
That you, SPC Aguayo did on Saturday 8 July, 2006, fail to draw your weapon after being given a direct order to do so.

## PART III - SUMMARY OF COUNSELING

Complete this section during or immediately subsequent to counseling.

**Key Points of Discussion:**

SPC Aguayo, you chose to violate the direct order of a Sergeant First Class, your platoon Sergeant, to draw your weapon. As a result of your action, it will be my recommendation to the commander that you receive a company grade article-15. You are a hard worker, and your actions disapoint me. I encourage you to reconsider your actions in the future and to remember the oath that you took when you joined the United States Army.

You are being counseled IAW AR 350-21, para 5 and AR 635-200, para 1-16, to inform you that your conduct and/or performance will warrant initiation of separation action under AR 635-200 for one of the following reasons: Involuntary separation due to parenthood/Chap 5, 5-8 Personality disorder/Chap 5, para 5-13, Entry level performance and conduct/Chap 11, Unsatisfactory performance/Chap 13, Minor disciplinary infractions or a pattern of misconduct/Chap 14, para 1-12a and b. You are being counseled as to the type of discharge that could result from the possible separation action and the effect of each type. If you are separated for entry level separation you service will be uncharacteristic. If you are separated for involuntary separation due to parenthood, personality disorder, or unsatisfactory performance you could receive an Honorable or General under Honorable conditions discharge. If you are separated for minor disciplinary infractions or a pattern of misconduct you could receive an honorable, General under Honorable conditions, or a other than honorable conditions discharge. Both Honorable and General discharges entitle you to full Federal rights and benefits provided by law. However, a discharge under other than honorable conditions may or may not deprive you of veterans benefits administered by the VA: a determination by that agency is required in each case. Also, a general or Other than Honorable discharge could cause you substantial prejudice in civilian employment. You will be afforded a reasonable opportunity to overcome your deficiencies before initiation of any separation

## OTHER INSTRUCTIONS

This form will be destroyed upon: reassignment (other than rehabilitative transfers), separation at ETS, or upon retirement. For separation requirements and notification of loss of benefits/consequences see local directives and AR 635-200.

DA FORM 4856, JUN 1999        EDITION OF JUN 85 IS OBSOLETE        USAPA V1.00

*subordinate's behavior and include a specified time line for implementation and assessment (Part IV below).)*

Soldier will draw his weapon in the future.
Soldier will be made aware of the consequences of his actions through counseling with the legal office.

**Session Closing:** *(The leader summarizes the key points of the session and checks if the subordinate understands the plan of action. The subordinate agrees/disagrees and provides remarks if appropriate.)*

Individual counseled:  ☐ I agree   ☑ I disagree with the information above.

Individual counseled remarks:
Even though the event in this statement is accurate, I do not agree with the plan of action. As a contscientous objector training with weapons conflicts with my beleifs. My civilian lawyer also explained to me that the Army would honor AR 600-43, while the court reviews my case.

Signature of Individual Counseled: Agustin M. Aguayo          Date: 24 July 2006

**Leader Responsibilities:** *(Leader's responsibilities in implementing the plan of action.)*

Signature of Counselor: Edgar Y. Luna Ogando          Date: 24 July 2006

**PART IV - ASSESSMENT OF THE PLAN OF ACTION**

**Assessment:** *(Did the plan of action achieve the desired results? This section is completed by both the leader and the individual counseled and provides useful information for follow-up counseling.)*

Counselor: _____   Individual Counseled: _____   Date of Assessment: _____

**Note:** Both the counselor and the individual counseled should retain a record of the counseling.

REVERSE, DA FORM 4856, JUN 1999                                                           USAPA V1.00