UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AGUSTIN AGUAYO, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 05-1580 (RCL) |
| ) | |
| FRANCIS J. HARVEY, ) | |
| Secretary of the Army ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

This matter comes before the Court on Agustin Aguayo's ("Aguayo") Petition for a Writ of Habeas Corpus [10]. Aguayo challenges the denial of his application for discharge from service as a conscientious objector. Upon consideration of the filings, the applicable law, and the entire record herein, the Court concludes that the petition will be denied.

## BACKGROUND

The Department of Defense has established procedures for processing applications for discharge on the basis of conscientious objection. See 32 C.F.R. part 75 ("Conscientious Objectors"). To implement these regulations, the Army issued Army Regulation ("AR") 600-43, which defines conscientious objection as a "firm, fixed and sincere objection to participation in war in any form or the bearing of arms, because of religious training and belief." AR 600-43, Glossary § II ("Terms"). The regulation defines religious training and belief as "belief in an external power or being or deeply held moral or ethical belief, to which all else is subordinate or upon which all else is ultimately dependent, and which has the power or force to affect moral

well-being . . . . The term 'religious training and belief' may include solely moral or ethical beliefs even though the applicant himself may not characterize these beliefs as 'religious' in traditional sense..." Id.  A applicant for discharge based on conscientious objection (known as "1-O status") must demonstrate that he or she meets this definition by clear and convincing evidence.  AR 600-43, ¶ 1-7(c).

Specialist Agustin Aguayo ("Petitioner"), a soldier in the United States Army ("Army"), requested a discharge from service, alleging conscientious objector ("CO") status.  Petitioner voluntarily enlisted in the Army on November 19, 2002, for eight years with four years of active duty.  R. at 2, 13.  He entered service on January 14, 2003.  In February 2004, shortly after arriving at his unit and receiving notice of a deployment to Iraq, Aguayo submitted an application for discharge on the basis of conscientious objection.  R. at 47, 62-63.  Chaplain Downs and a psychologist interviewed petitioner in February of 2004.  Following the interviews, Colonel Randal A. Dragon appointed Captain Sean Foster as the Investigating Officer ("IO").  After the investigation, the IO recommended that petitioner be granted conscientious objector status.  R. at 110.  On March 3, 2004, petitioner waived his rebuttal rights and the IO signed his Findings and Recommendations Memorandum on March 20, 2004.  R. 53-54.

Following, the IO's recommendation of approval, Aguayo's Battalion and Brigade Commanders recommended disapproval.  R. at 55-58.  After receiving legal review from the Staff Judge Advocate, the Commanding General, Major General John R. S. Batiste, also recommended disapproval of petitioner's application on May 23, 2004.  R. at 46.  Attached to Major General Batiste's recommendation was a memorandum from the Staff Judge Advocate, which recommended disapproval for the following reasons:

> a. PFC Aguayo's convictions do not appear to be sincerely held. CPT Foster conducted an extensive interview with PFC Aguayo and a thorough investigation into his background. PFC Aguayo is a medic. He has not persuasively shown how his duties as a medic are incompatible with his newly discovered beliefs, other than stating he feels he was misled by his recruiter, and he expected to work in a hospital. The timing of his application raises doubts as well. Only days prior to his unit's deployment to Iraq, PFC Aguayo submitted his application. Chaplain Downs agreed that "the timing of his request makes it questionable." In addition, PFC Aguayo is applying for CO Status (1-O) together with his friend, also a medic, PFC Benson.
>
> b. PFC Aguayo did not identify any specific ways he has altered his behavior to accommodate his beliefs. Although practicing a religion is not a requirement for CO approval, PFC Aguayo has not discussed any equally significant source of his beliefs other than he was raised in a kind and respectful family. The evidence shows PFC Aguayo performing well as a medic. As stated by the battalion commander, LTC Sinclair, he desires to get out of the deployment and the Army, and he is using this process in an attempt to end his service early.

Pet. at 7-8.

On June 24, 2004 and again on July 14, 2004, Aguayo submitted a rebuttal to Major General Batiste's recommendation, arguing that the recommendation did not contain sufficient reasons for decision. Id. On July 14, 2004, the Army rejected Aguayo's rebuttal as procedurally defaulted because his application for discharge had already been submitted. Id. On July 30, 2004, the Department of the Army Conscientious Objector Review Board ("DACORB") determined that SPC Aguayo did not qualify as a conscientious objector and therefore was not entitled to be separated from service. R. at 131.

Aguayo filed his petition in this Court on August 5, 2005. On August 15, 2005, the Court issued an Order to show cause why the writ should not issue. The Army withdrew its denial of Aguayo's application and agreed to consider Aguayo's rebuttal. This Court stayed this case until

further order. On January 30, 2006, the Army again denied Aguayo's application. R. at 89. Petitioner amended the petition on March 13, 2006. On April 10, 2006 the Court lifted the stay and established a briefing schedule.

## LEGAL STANDARD

Petitioner is challenging an internal military personnel decision. Military personnel decisions are afforded substantial deference. Piersal v. Winter, 435 F.3d 319 (D.C. Cir. 2006). The Court does not weigh the evidence or test whether substantial evidence supports the military's position. Witmer v. United States, 348 U.S. 375, 380-81 (1955). Instead, the court must "search the [administrative] record for some affirmative evidence to support the local board's overt or implicit finding." Dickinson v. United States, 346 U.S. 389, 396 (1953). In other words, the Army must demonstrate that its decision had some basis in fact. United States ex rel. Barr v. Resor, 443 F.2d 707, 708 (D.C. Cir. 1971).

## DISCUSSION

Petitioner argues that he has satisfied each of the requirements set out in Department of Defense regulations, 32 C.F.R. Part 75, and that the record does not contain the Army's reasons for denying petitioner's application. Traverse at 14. Respondent maintains that the record provides ample evidence to meet the "basis in fact" standard, and that the denial memorandum issued by the Army on January 30, 2006, satisfies the regulatory requirement to provide "reasons" for the denial of Aguayo's conscientious objector application.

**A.   Conscientious Objector Application**

The Army's established procedure for the evaluation of CO claims provides that military personnel will exercise their discretion in determining whether the soldier has met his burden of

establishing CO status by clear and convincing evidence.  Under 32 C.F.R § 75.5, the military must discharge any member:

> (1) Who is conscientiously opposed to participation in war in any form;
> (2) Whose opposition is founded on religious training and belief; and
> (3) Whose position is sincere and deeply held.

32 CFR § 75.5(a); see also Gillette v. United States, 401 U.S. 437 (1971).  In addition, "no member of the Armed Forces who possessed conscientious objector beliefs before entering military service is eligible for classification as a conscientious objector" if such pre-existing beliefs would have qualified him for a CO exemption under the draft laws.  32 C.F.R § 75.4(a)(1).  To implement this regulation, the Army has adopted AR 600-43.

Petitioner claims that he has made out a prima facie case for discharge as a conscientious objector.  Pet. at 12.  The Court does not agree and finds that the DACORB properly concluded that Aguayo did not demonstrate grounds for discharge by clear and convincing evidence.

Army Regulation 600-43 ¶ 1-7(b) states:

> Relevant factors that should be considered in determining a person's claim of conscientious objection include training in the home and church; general demeanor and pattern of conduct; participation in religious activities; whether ethical or moral convictions were gained through training, study, contemplation, or other activity comparable in rigor and dedication to the processes by which traditional religious convictions are formulated; credibility of persons supporting the claim.

Petitioner's application does not identify any religious training or belief that would justify conscientious objector status.  See R. at 95-106.  Aguayo's beliefs do not appear to be grounded in religious principles or developed through activity comparable in rigor and dedication to the process by which traditional religious convictions are formulated.  R. at 73.  In addition, the

5

timing of Aguayo's application is suspect. He enlisted in the Army after a religious upbringing, and with full knowledge not only that the Army's mission is to defend this nation, but also that hostilities flowing from the September 11, 2001 attacks had already begun. R. at 97. Shortly after arriving at his unit, and after the unit was informed of a pending deployment, petitioner applied for CO status. See R. at 47, 73. During the same time period, one of Aguayo's friends also applied for conscientious objector status. R. at 47. While suspicious timing alone is not enough to deny an application, AR 600-43, 1-7.a.(5)(c), it supports denial.

The beliefs Aguayo asserts all arose prior to his enlistment. R. at 95-100. The obligation of the conscientious objector is to give timely notice of his reservations. AR 600-43 ¶ 1-7(a)(1). Aguayo states that he enlisted in the Army because of financial burdens associated with educational expenses. R. at 96-97. A true conscientious objector who hides his beliefs to obtain the benefits of military service is not allowed to then claim CO status when called to serve. See Nurnberg v. Froehlke, 489 F.2d 843, 847 (2d Cir. 1973). ("There is no national policy that we know of which permits the true conscientious objector to hide his beliefs in order to obtain the advantages of a commission, and then when called to serve, suddenly to advert to his conscience."). The Court concludes that the Army's decision had a sufficient basis in fact

**B.    DACORB's Reason for Denial**

Army Regulation 600-43 ¶ 2-8(d)(1) requires the DACORB, upon disapproving a discharge application, to "furnish the [applicant] a copy of the disapproval recommendations and the supporting reasons." If the disapproval is made final by the Army, "the reasons for this decision will be made a part of the record." Id. ¶ 2-8(d)(3). Petitioner argues that the Army violated these regulations "when it failed to include in the record its reason or reasons for

denying Mr. Aguayo's application." Traverse at 14. The Army contends that, properly interpreted, the regulation requires no more than what the Army provided in the record. R. at 89.

Reviewing courts should accord an agency's interpretation of its own regulations a "high level of deference," and defer to that interpretation "unless it is plainly wrong." Gen. Carbon Co. v. OSHRC, 860 F.2d 479, 483 (D.C. Cir. 1988). This standard of deference requires a court to defer to an agency's interpretation of a rule even when that interpretation diverges from what a first-time reader might conclude was the "best" interpretation of the regulation. Gen. Elec. Co. v. Environ. Prot. Agency, 53 F.3d 1324, 1327 (D.C. Cir. 1995).

The Army's January 30, 2006, denial letter states:

> 1. The DA [Department of the Army] Conscientious Objector Review Board (DACORB) has reviewed the application of PFC Agustin Aguayo for Conscientious Objector Status (CORB).
>
> 2. After thorough examination of the Case Record, the DACORB determined that the applicant did not present clear and convincing evidence, IAW 600-43, that the applicant's stated beliefs warrant award of 1-O status.
>
> 3. A copy of the case record will be included in the OMPF, CMIF, and MPRJ IAW AR 640.10.

The record also contains the minutes of the DACORB meeting regarding Aguayo's application, including handwritten notes by the two board members who voted to deny Aguayo's application. R. at 87-89. The Chaplain's notes state that "SPC Aguayo does not demonstrate a clear, convincing evidence of a fixed, firm, and crystallized burden of proof. Applicant has not established, by clear and convincing evidence, that the nature of the claim comes within the definition of criteria IAW AR 600-43." R. at 88. The DACORB President's notes state that "Applicant has not demonstrated clear and convincing evidence of a firm fixed belief." R. at 88.

On March 24, 2006, the DACORB issued a supplemental memorandum,[1] stating:

> • Applicant lacks the religious foundation; the underpinning that supports Conscientious Objector beliefs
>
> • Applicant has not provided any significant source of his beliefs; conscience or moral views that would warrant Conscientious Objector status
>
> • It appears that applicant held beliefs prior to entry to the Army. Although these could have crystallized after entry, it still appears that these beliefs were considerable prior to entry with no significant identification of these beliefs at entry to the Army
>
> • Questionable timing of the application just prior to unit deployment

Opp'n, Ex. B.

On its face, the regulation only requires that the Army provide reasons for the denial of an application for discharge based on conscientious objection; it does not require an exhaustive list. Courts are limited to determining whether the "record reveals 'some proof that is incompatible with the applicant's claim'" See Roby v. U.S. Dep't of the Navy, 76 F.3d 1052, 1058 (9th Cir. 1996) (citing Woods v. Sheehan, 987 F.2d 1454, 1456 (9th Cir. 1993)). In light of the deference owed to the military's personnel decisions and interpretations of its regulations, this is the "narrowest review known to the law." Woods, 987 F.2d at 1456. The Army argues that the January 30, 2006, denial letter, the minutes of the DACORB meeting, and the March 24, 2006 memorandum satisfy the regulatory requirement. This interpretation is reasonable, and therefore entitled to deference. Accordingly, the Court concludes that the Army complied with AR 600-43

---

[1] Petitioner also argues that the memorandum from the Board President dated March 24, 2006 is improper. Contrary to petitioner's claim, the memorandum is part of the record. The DACORB simply decided to provide further reasons for its decision. The facts supporting the memorandum are also in the administrative record.

¶ 2-8(d).

## **CONCLUSION**

For the reasons stated herein, the Court will deny Aguayo's petition.

A separate Order will issue this date.


Signed by Royce C. Lamberth, United States District Judge, August 24, 2006.